# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

NATIONAL ASSOCIATION FOR STOCK
CAR AUTO RACING, LLC,

      Plaintiff,

v.

ARNQQ, BIGWIG LOCAL, BOAT DAY,
CAPCRUSH, DIYCAP, FACTORY LOCAL,
FORGE VIBES, FSPINXTI, FUFUTOOY
SHOP, FULUKE, FUNNY SOUL LLC,
FUNNY TEE SHIRT, GALA GOODS,
GALAOGEBA, GIFTEDGEAR,
GKDKKDSHOP, GLIMMERMART, GLOBAL
NICE, GNHOW, GONEBUCKETING HAT,
GOOD GOOD LIFES, GOODSHOPONE,
GRAPHIC GRIND, GSSDYD, HALF PAST
TWELVEN, HAPPY GO TO YOU, HAPPY
WOMENS CLOTHING SHOP LOCAL, HCYL,
HENYIDA AQ, HERMIT THEORY, HK HK H,
HOTBLOODEDTSHIRT, HUNDRED YEAR
OLD, HUSHANG FASHION, HYXMLYZPP,
IBOIBOSHOP, JAMEREC, JAMERICAND,
JEEROR WHITE, JOYFULTEESHOP, KG
FASHION, KNOT HOME, LAI SUMMER,
LAITANG, LATE BLOOMER,
LAZYGALAXY, LCQGC SHOP J, LDJXXHH,
LEIOLEI, LEMON BUBBLE, LINHUIAA,
LINNGLING, LIUZI LIUZI, LOUGSLIN,
LOVE LH, LUMINARYAPPAREL, LUNOO
CLOTHING, LUXURY WANDERER,
LWRLWR, LYS LNNOVATION LAB DIY,
MACKENZIE YES, MANCAO BEAUTY,
MASCULIINE, MENGURBAN STYLE,
MINGXIN ESSENCE, MITTE DES
SOMMERS, MIX PHO J, MNDRAGON FLY,
MOONLIGHT SLING BAG SHOP,
MRLIHUALITWO, MRTBOYSHOW,
MTGDXMT, MTH DIY, N MODA LUXE,
NEBULA GRAIN, NEOTHREAD, NEW
HUTUO, NMSDER, NNORTHSONG,
NORTHPULSE MARKET, NOUVEA
STUDIO, NSCOLS, NULL LAB A,

Civil Action No. 26-cv-3811

NVBVAIOA T SHIRT, OLD BOYS BOUTIQUE, ONBUY, OPALTHEORY, OPHELLA, PERSONALIZED THREADWORKSI, PERSONALIZED THREADWORKSJ, PICKODTF, POTATO CLOTH, PRINTED SHIRTS, PRODUCT MADE IN COTTON T, QBK ELEVENTH, QBK FIFTEENTH, QBK FOUR, QBK TWELFTH, QIANDUODUO CLOTHING, QIZGG, QIZOE FASHION, QUALITY THREADS TSHIRTS, RAINPOP, RIVERRIDER, ROOMANNTICC, RTI COILD, RUFANHUANG, RUGGED AXIS, RUTEVOX, SHIRTSCULPT STUDIO, SHOPPING TWENTYFIVE, SHOPPING TWENTYTWO, SHOPPINGFORTYFOUR, SIEPLEI, SKYPOEW, SMALLR, SOV QUITR, SPARKYY, SQFFWTY, SSLYE, STREETFUSION, STYLE BLAZE THREE, STYLEHORIZON, STYLISH TEE BOUTIQUE, SUDOVO, SUNNYEXPORTS, SWIFTCUSTOM, T CLOTHING CB, T HC, TANGBYING, TAOZAISHANGHANG, TB KATERAPOD TEES, TB LUMEEPOD SHOP, TC HUEANPOD TEES, TC JOVIALJERSEY, TEE PACK SHOP, TEEBLISS, TEECANVAS PRINTS S, TEESREALM SHOP, TEETERRIFIC, THE NOBLENOOK, THE PRINTED STORY TEE, THINKINGTOGETHER, THREADMASON S, TINVIBE, TMSHIRTONE, TOAGELH, TOP ZERO, TRENDYPLUS, TTSHIRTONE, TUTUDUODUO, UNIQUE PRINT TEE WORLD, UNIQUEPRINT, UPPERART, URBANCHICCOLLECTION, VELUMISS, VERITAS ALBA, VERVE SPORT, VESTIGE ATELIER, VILIKE ME COMMERCIAL BANK, VINTAGE VIBE ART, VKLIKE ME COMMERCIAL BANK, VLDAWN, VVFAP, VYNX, WANDAZON, WASHING TSHIRTS, WEARMYTEE, WEARYOURMOOD, WELLZHUANGNENG LOCAL, WJHMD, XIAO AO ORIGINAL, XIAOJUNWEI, XINGMAN, XINYAOHUAGUANGD, XIUBEI RABBIT EIGHTEEN, XYCYZP, YALIDE CLOTHING, YANGCHUNZHIA, YDS

2

COUTURE, YELLOW DUCK ONE, YI TINGA, YIMASER, YLL ONLINE, YOOLK CLOTHING, YOUR TEE SHIRTS, YOUROTATING, YOUYOUGOCONSUME, YUANWANG GLOBAL, YUANYUANCHEN, YUDOLA TRADE, YUNTEESCLOTH, YYSHIZHU, YYTSSS, ZGCKJD, ZHANGHAOCHEN A, ZS XINTINGZHUO, ZTTOY ATTIRE, ZYP STYLE STATEMENT, and ZYXH TRADE,

        Defendants.

## UNREDACTED COMPLAINT

National Association for Stock Car Auto Racing, LLC ("Plaintiff" or "NASCAR"), by and through its undersigned counsel, hereby files this Complaint against the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A hereto (collectively, "Defendants") and alleges as follows:

## I.    Jurisdiction And Venue

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., and 28 U.S.C. §§ 1331 and 1338(a)-(b).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) because each of the Defendants directly targets consumers in the United States, including New York, through means including, but not necessarily limited to, the fully interactive commercial internet stores operating under the Defendant aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases").

3.      Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3)(i) and (ii), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this Judicial District, and derive substantial revenue from business transactions in New York and in this Judicial District or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

4.      In addition, Defendants' illegal counterfeiting and infringement actions have caused, and continue to cause, injury to Plaintiff in New York and in this Judicial District such that Defendants should reasonably expect to be required to appear in New York and this judicial District and answer for the consequences of their actions.[1]

5.      For example, Defendant Internet Stores accept orders for counterfeit products from and offer to ship to New York addresses located in this Judicial District.

---

[1]*See, World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 59, 62 L.Ed.2d 490 (1980).

DOE 55 love LH



6.      Moreover, upon information and belief, Defendants are systematically directing and targeting their business activities at consumers in the U.S., including those in New York, in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as PayPal and Shop Pay, as well as other yet-undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, use to communicate with Defendants regarding their listings for counterfeit products, and use to place orders for, receive invoices for, and purchase counterfeit products for delivery in the U.S., including delivery

5

to New York (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and more particularly, in this Judicial District).

7.    In the process of investigating the individual Defendants and their respective Seller Aliases, Plaintiff determined that none of the defendant entities identified in Schedule A to this Complaint, all of whom are believed to be located in China, provide a physical address that can be relied upon purposes of service of process.

8.    Plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process for each of the Defendants identified in Schedule A and was unsuccessful in doing so.

9.    Plaintiff's search for a physical address for each of the Defendants was based upon the information provided on the Defendants' respective websites and by searching Baidu.com, one of the most popular search engines in China, in an attempt to verify whatever information was provided.

10.    Few, if any, of the Defendants provided a complete and accurate physical address on their respective e-commerce store sites. When complete addresses were provided, further investigation revealed that such addresses were not located in an area where any business potentially linked to the Defendants could reasonably be located.

11.    Because Plaintiff conducted a reasonably diligent search for a physical address where each Defendant could be served with process but was unsuccessful in discovering reliable information, Defendant's addresses are "unknown" and the requirements of the Hague Service Convention do not apply, thus permitting Plaintiff to achieve service by alternate means authorized by the Court, including service by email.

## II.     Parties

12.     Plaintiff National Association for Stock Car Auto Racing, LLC is limited liability company organized and existing under the laws of the State of Florida, with its principal place of business at One Daytona Boulevard, Daytona Beach, Florida 32114.

13.     NASCAR was founded in 1948 and is the foremost stock car and stock truck racing sanctioning body in North America. Each year, NASCAR sanctions over 1,500 races at over 100 tracks in 48 U.S. states, as well as in Canada, Mexico, Brazil, and Europe.  NASCAR events are broadcast domestically and internationally and attract millions of viewers annually. In addition to providing entertainment services through its affiliates and partners (including its partner Fanatics, which operates the NASCAR Shop depicted below), NASCAR sells, markets, designs, distributes, and licenses NASCAR-branded products worldwide (the "NASCAR Products"):

https://store.nascar.com/



14.     This action has been filed to combat online trademark infringers who trade upon Plaintiff's reputation and goodwill and valuable intellectual property by selling and/or offering for sale unauthorized and infringing versions of the NASCAR Products in violation of Plaintiff's federally registered trademarks.

15.    Plaintiff NASCAR is the registered owner of U.S. Trademark Registration Nos. 1,850,527; 1,908,112; 2,885,737; 4,289,440; 5,388,088; 5,578,788; and 6,196,869 (the "NASCAR Marks").

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| ////NASCAR | 1,850,527 | CLASS 6: key chains and license plates of common metals;<br><br>CLASS 9: scientific apparatus; namely, sunglasses and walkie talkies;<br><br>CLASS 14: precious metals; namely, silver medallions, pins, and wrist watches;<br><br>CLASS 16: paper articles; namely, bumper stickers, calendars, counter units for trading cards, decals, book covers, memo pads, pens, pencils, mounted photographs,  decals, trading cards, graphic applications for automobiles, trading card albums;<br><br>CLASS 18: leather and leather imitations; namely, back packs, credential holders, wallets, and luggage;<br><br>CLASS 21: household utensils; namely, mugs, shot glasses, drinking glasses,  decanters, and plastic sport bottles;<br><br>CLASS 24: textile goods; namely, beach towels, blankets, cloth banners, laminated banners, laminated signs;<br><br>CLASS 25: clothing; namely, caps, baseball hats, sweat shirts, sweat pants, footwear, golf shirts, jackets, knit caps, pants, shorts, straw hats, sweaters, tank tops, T-shirts, and visors; |

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| | | CLASS 28: games and playthings; namely, board games, die cast miniature cars, die cast miniature trucks, electronic driving games, electronic road racing sets, electronic slot cars, plastic action figures, plastic model cars, plush stuffed animals, puzzles, radio control cars and wrist racers; <br><br> CLASS 30: edible goods; namely, chocolate candy bars |
| NASCAR | 1,908,112 | CLASS 6: common metals; namely, key chains, license plates and pins; <br><br> CLASS 9: scientific apparatus; namely, sunglasses and walkie talkies; <br><br> CLASS 14: precious metals; namely, silver medallions, bronze medallions and wrist watches; <br><br> CLASS 16: Paper articles, namely, bumper stickers, calendars, display counter units for trading cards, decals, pens, mounted and unmounted photographs, notebooks, trading cards and laminated signs; <br><br> CLASS 18: leather and leather imitations; namely, back packs, credential holders, wallets, fanny packs; <br><br> CLASS 21: household utensils; namely, mugs, shot glasses, drinking glasses and plastic sport bottles; <br><br> CLASS 24: textile goods; namely, beach towels, blankets;  cloth banners; <br><br> CLASS 25: clothing; namely, caps, baseball hats, sweat shirts, sweat |

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| | | pants, footwear, golf shirts, jackets, knit caps, pants, vests, shorts, straw hats, sweaters, tank tops, T-shirts and visors<br><br>CLASS 28: games and playthings; namely, board games, die cast miniature cars, die cast miniature trucks, plush stuffed animals;<br><br>CLASS 30: edible goods; namely, chocolate candy bars and cookies |
| | 2,885,737 | CLASS 25: Clothing, namely t-shirts, collared shirts, sport shirts, jackets, caps, hats |
| STRICTLY STOCK | 4,289,440 | CLASS 25: Clothing, namely, caps, hats, t-shirts, sweat shirts |
| | 5,388,088 | CLASS 25: Clothing, namely, caps, hats, baseball hats, straw hats, visors, tops, collared shirts, sport shirts, golf shirts, t-shirts, tank tops, sweaters, sweat shirts, jackets, coats, rainwear, sweat pants, pants, shorts, nightgowns, pajamas, robes, vests, socks, belts, shoes, and footwear |
| | 5,578,788 | CLASS 25: Clothing, namely, caps, hats, baseball hats, headwear, visors, tops, collared shirts, sports shirts, golf shirts, t-shirts, tank tops, sweaters, sweat-shirts, jackets |
| | 6,196,869 | CLASS 25: Clothing, namely, caps, hats, baseball hats, headwear, visors, tops, collared shirts, sports shirts, golf shirts, t-shirts, tank tops, sweaters, sweat-shirts, jackets;<br><br>CLASS 41: Entertainment services, namely, conducting motorsports racing events; regulating, governing, |

10

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| | | and sanctioning motorsports racing events; providing an online database featuring news and information regarding motorsports via computer information networks, global networks and wireless networks; entertainment services, namely, programs featuring motorsports racing and news, information, and developments regarding motorsports racing, all rendered through television and radio; |

16.     The federal registrations for the NASCAR Marks are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations constitute prima facie evidence of the validity of the NASCAR Marks, Plaintiff's ownership thereof, and Plaintiff's exclusive right to use the NASCAR Marks in commerce pursuant to 15 U.S.C. § 1057(b).

17.     True and correct copies of the registration certificates for the NASCAR Marks are attached as Exhibit 1 and are incorporated herein by reference.

18.     The NASCAR Marks have been the subject of substantial and continuous marketing and promotion by Plaintiff.  Plaintiff has and continues to widely market and promote the NASCAR Marks in the industry and to consumers.  Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, the NASCAR website and social media sites, and point of sale materials.

19.     The NASCAR Marks have been used in commerce continuously for more than five years since being registered and have never been abandoned. The NASCAR trademark registrations are valid, subsisting, and in full force and effect.

20.     Plaintiff has invested substantial time, money, and effort in building up, developing, advertising, and otherwise promoting the NASCAR Marks. As a result, products

associated with the NASCAR Marks are recognized and exclusively associated by consumers and the public as being products sourced from Plaintiff.

21.     Given its worldwide popularity and recognition as a household term, including in New York and the broader United States, the NASCAR Marks have achieved the status if famousness as that term is used in 15 U.S.C. § 1125(c).

22.     Plaintiff has made efforts to protect its interests in and to the NASCAR Marks. No one other than Plaintiff and its licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the NASCAR Marks without the express written permission of Plaintiff.

23.     Defendants are individuals and business entities who, upon information and belief, reside in various foreign jurisdictions, including but not limited to China and other countries from which counterfeit goods are commonly exported to the United States. Defendants conduct business throughout the United States, including within New York and in this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and infringing versions of the NASCAR Products to consumers within the United States, including New York and in this Judicial District.

## III.    __Factual Background__

24.     Prior to the proliferation of anonymous online marketplaces, Plaintiff successfully enforced its intellectual property rights against identifiable infringers and counterfeiters through traditional legal channels. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made traditional enforcement actions

challenging. Plaintiff has attempted to utilize takedown procedures to remove infringing NASCAR Products, but such efforts have proven inadequate and commercially unreasonable given the sophisticated and coordinated mass counterfeiting operation that is occurring over the Internet and the reality that new infringing listings now appear as quickly as others are removed.

25.    Defendants' conduct is not accidental or negligent, but is instead part of a deliberate and coordinated scheme to trade upon the goodwill associated with the NASCAR Marks. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed Plaintiff and its ability to police and enforce its rights against the hundreds of anonymous defendants that are selling illegal counterfeit and infringing products at prices below the cost of original, authentic NASCAR Products:

**PLAINTIFF'S OFFICIALLY LICENSED PRODUCT**



Most Popular
$62.99
Men's NASCAR Classic Ink Navy Full-Zip Hoodie

Most Popular
$37.99
Men's NASCAR '47 Black Trucker Adjustable Hat

$34.99
Men's NASCAR Black Reigns T-Shirt

**COUNTERFEIT/INFRINGING PRODUCTS**

DOE 64 MengUrban Style





DOE 149 TrendyPlus





No import charges  🖥 Local warehouse - Fastest delivery: 2 BUSINESS DAYS 6 sizes to choose 180g Racing TShirt Black I Strip On Weekends Traffic Light Flags Design for Drag Racing Enthusiasts

Sold by ⬜ >

**$11.19**  Pay $2.79 today 🔲 Klarna.

🚚 Free shipping on orders over $30 from this seller  >  |  ✓ No order min  | >

Color: Black

Size  Standard  US                    📖 Size guide

( S )  ( M )  ( L )  ( XL )  ( XXL )  ( XXXL )

Qty  [ 1  ⌄ ]

[ Add to cart ]   [ **Buy now**  🚚 Faster dispatch ]

🚚 **Ships from this seller** >

🔲 Standard: $2.99 or FREE (if ordering $30.00+ from this seller), est. Fastest delivery in 2 business days

🆓 No import charges for all local warehouse items and no extra charges upon delivery

🛡 **Safe payments · Secure privacy** >

🔁 **Order guarantee** >

Free returns   Best price guarantee   $5.00 Credit for delay   R  >



**Model is wearing: S**
**Fit: True to size**

Height: 5'11"        Bust: 41.4 inch
Waist: 29.6 inch     Hips: 43.7 inch



**TrendyPlus**

[ 🔖 Follow ]   [ Shop all items (3.8K+) ]



26.     The above examples evidence a cooperative counterfeiting network using fake e-commerce storefronts designed to appear to be selling authorized products.

27.     In an effort to illegally profit from the value and strength of the NASCAR Marks as source-identifiers, Defendants have created numerous Seller Aliases and have designed them to appear to be selling authentic NASCAR Products.

28.     Plaintiff has suffered and continues to suffer immediate and irreparable harm through loss of control over its valuable intellectual property, diminution of reputation and goodwill, loss of quality control, and impairment of licensing relationships and opportunities, for

which there is no adequate remedy at law, thereby necessitating both immediate injunctive relief and monetary damages.

29.     The  systematic and coordinated  mass  counterfeiting and infringement  campaign has caused, and continues to cause, substantial and irreparable harm to Plaintiff and its ability to police and effectively enforce its rights  against  the  hundreds, if not thousands,  of anonymous online sellers who are selling counterfeit and infringing products.

30.     To be able to offer the infringing products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As a recent Homeland Security report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network.[2]

31.     The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities  in  the  unauthorized  products  offered  for sale,  establishing  a  coordinated network of related operations arising from the same series  of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

32.     In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated

---

[2] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.

18

goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic.[3]

33.     Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting and infringement scheme are present in the instant action. For example, Schedule A shows the use of store names by the Seller Aliases that employ no normal business nomenclature and, instead, have the appearance of being entirely contrived, or if a company name that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Seller Aliases are deliberately operating deceptive online storefronts specifically designed to mislead consumers by appearing to sell genuine NASCAR Products, while knowingly selling unauthorized, inferior counterfeit imitations of Plaintiff's NASCAR Products that illegally use the NASCAR Marks ("Infringing Products").

34.     Screenshot evidence showing each Defendant on Schedule A selling Infringing Products is attached as Exhibit 2.

35.     The Seller Aliases also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going

---

[3] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringement operations.

36.    The Infringing Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Infringing Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

37.    The Seller Aliases intentionally conceal their identities and the full scope of their counterfeiting and infringement operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal operations. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

38.    Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Use of such Seller Alias registration patterns is one of many common tactics employed by the Defendants to conceal their identities and the full scope and interconnectedness of their massive infringement operation and to avoid being shut down.

39.    In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases involving online infringers systematically employ a variety of sophisticated tactics specifically designed to evade detection and circumvent intellectual property enforcement efforts. For example, infringers like Defendants will often register new online

marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

40.    A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods (carriers such as Federal Express, DHL or UPS), and in 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments, that is, shipments valued at $800 or less. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2.[4]

41.    Further, infringers such as Defendants maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts, including PayPal accounts, strategically concealed behind layers of payment gateways, specifically designed to evade detection and allow their infringing operations to continue despite Plaintiff's enforcement efforts.

42.    Upon information and belief, Defendants maintain offshore bank accounts and transfer funds from their PayPal accounts to the offshore accounts outside the jurisdiction of this Court, demonstrating the existence of a calculated scheme to shield their illicit profits from legal enforcement and recovery.

43.    Defendants, without any authorization or license from Plaintiff, have knowingly, willfully, and deliberately counterfeited Plaintiff's NASCAR Marks in connection with the

---

[4] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

systematic advertisement, distribution, offering for sale, and sale of Infringing Products into the United States, including within this judicial district of New York, over the Internet. Each Seller Alias offers shipping to the United States, including New York, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York.

**Count I - Trademark Infringement and Counterfeiting**
**(15 U.S.C. § 1114)**

44.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

45.     This is a trademark infringement action against the Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered NASCAR Marks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The NASCAR Marks are distinctive. Due to Plaintiff's substantial and continuous investment in quality control, brand management, and product development, consumers have come to expect, rely upon, and associate the highest quality exclusively with Plaintiff and authentic NASCAR Products offered, sold, or marketed under the NASCAR Marks.

46.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its NASCAR Marks and with knowledge that Defendants' Infringing Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the NASCAR Marks and used spurious designations that are identical to, or substantially indistinguishable from, the NASCAR Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

47.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Infringing Products to the

purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with willful and reckless disregard of Plaintiff's exclusive rights in and to the NASCAR Marks through their systematic and deliberate participation in such unlawful activities.

48.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the NASCAR Marks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Infringing Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive consumers, the public and the trade into believing that the Infringing Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

49.     Defendants' unauthorized use of the NASCAR Marks on or in connection with the Infringing Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and with deliberate intent to unfairly benefit from and damage the substantial and incalculable goodwill Plaintiff has developed in the NASCAR Marks through years of quality control and significant investment.

50.     These Defendants' actions constitute willful counterfeiting of the NASCAR Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), thus entitling Plaintiff to relief pursuant to § 1116(d), and §§ 1117(a)-(c), entitling Plaintiff to elect statutory damages instead of actual damages, as well as treble damages, and attorneys' fees.

51.    Defendants' continued, knowing, and willful use of the NASCAR Marks without Plaintiff's consent or authorization constitutes intentional infringement of the NASCAR Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

52.    Plaintiff has no adequate remedy at law, and if these Defendants' actions are not immediately enjoined, Plaintiff will continue to suffer immediate and irreparable harm to its reputation, market position, and the substantial goodwill associated with the NASCAR Marks, causing damages that are difficult to calculate with precision.

53.    The injuries and damages sustained by Plaintiff have been directly and proximately caused by the Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit NASCAR Products.

### Count II - False Designation of Origin, Passing Off & Unfair Competition
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

54.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

55.    Defendants' promotion, marketing, offering for sale, and sale of infringing NASCAR Products has created and is sustaining a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiff.

56.    By using the NASCAR Marks in connection with the sale of unauthorized Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized Infringing Products.

57.    Defendants' false designation of origin and misrepresentation of fact as to the origin, sponsorship, affiliation, and approval of the unauthorized products to the general public is

a knowing and willful violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), entitling Plaintiff to injunctive relief, monetary damages, and attorneys' fees.

58.    Upon information and belief, Defendants' wrongful actions alleged in this Complaint have been undertaken knowingly, deliberately, willfully, and with the intent to cause confusion, to cause mistake, and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its NASCAR Products, and NASCAR Marks.

59.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## Count III – Federal Trademark Dilution
### (15 U.S.C.  1125(c)/LANHAM ACT § 43(c))

60.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

61.    Based at least on the distinctiveness of the NASCAR Marks; the duration and extent of use of the trademarks; the duration and extent of advertising featuring the trademarks; the geographic area in which products and services have been sold and advertised featuring the trademarks; the nature of the trade channels used to market products and services featuring the trademarks compared to the trade channels through which Defendants sell their products and services; the degree of public recognition of the NASCAR Marks; and the federal registration of the trademarks, the NASCAR Marks have become famous, as that term is used in Section 43(c) of the Lanham Act, and has been famous for many years.

62.    Defendants' actions described above, all occurring after the NASCAR Marks became famous, are likely to cause dilution of the famous NASCAR Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

63.    As a direct and proximate result of Defendants' actions alleged above, Plaintiff has been damaged and will continue to be damaged.

## IV.    <u>Prayer For Relief</u>

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)    That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  using the NASCAR Marks or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized NASCAR Product or is not authorized by Plaintiff to be sold in connection with the NASCAR Marks;

    b.  passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and not approved by Plaintiff for sale under the NASCAR Marks;

    c.  committing any acts calculated to cause consumers to believe that Defendants' counterfeit and Infringing NASCAR Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d.  further infringing the NASCAR Marks and damaging Plaintiff's goodwill;

    e.  otherwise competing unfairly with Plaintiff in any manner;

    f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, Infringing

Products or related products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the NASCAR Marks;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the NASCAR Marks;

2)  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3)  Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Seller Aliases, and online marketplace account registrars, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products or related products not authorized by Plaintiff, which bear the NASCAR Marks, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products or related products not authorized by Plaintiff, which bear the NASCAR Marks; and

    c. take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages for infringement be trebled pursuant to 15 U.S.C. § 1117(b) due to the exceptional nature of this case and Defendants' willful infringement;

5) In the alternative, that Plaintiff be awarded statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2);

6) For Judgment in favor of Plaintiff against Defendants that they have:

    a. willfully infringed Plaintiff's rights in its federally registered trademarks; and

    b. otherwise injured Plaintiff's business reputation and goodwill by Defendants' acts and conduct set forth in this Complaint;

7) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8) Award such other and further relief, including temporary, preliminary and permanent injunctive relief, as this Court may deem just and proper under the circumstances and as allowed by law.

Dated: May 22, 2026

Respectfully submitted,

*/s/ Shengmao Mu*
Shengmao Mu
NY No. 5707021
**WHITEWOOD LAW PLLC**
57 West, 57th Street, 3rd and 4th Floors
New York, NY, 10019
Telephone: (917) 858-8018

28

Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*

**Schedule A**

| Doe No. | Seller Alias | Platform | Seller ID |
|---|---|---|---|
| 1 | ARNQQ | Temu | 634418220171018 |
| 2 | Bigwig local | Temu | 634418219254590 |
| 3 | Boat Day | Temu | 634418221155652 |
| 4 | CapCrush | Temu | 634418220255713 |
| 5 | DIYCAP | Temu | 634418223509526 |
| 6 | Factory local | Temu | 634418220108806 |
| 7 | Forge Vibes | Temu | 634418223875602 |
| 8 | FSPINXTI | Temu | 634418221753494 |
| 9 | fufutooy shop | Temu | 634418220176869 |
| 10 | Fuluke | Temu | 634418223129956 |
| 11 | funny soul LLC | Temu | 634418219058104 |
| 12 | Funny Tee Shirt | Temu | 634418217663356 |
| 13 | Gala Goods | Temu | 634418222617269 |
| 14 | galaogeBA | Temu | 634418222484188 |
| 15 | GiftedGear | Temu | 634418218961967 |
| 16 | GKDKKDSHOP | Temu | 634418221893650 |
| 17 | GlimmerMart | Temu | 634418221919903 |
| 18 | Global Nice | Temu | 634418222074409 |
| 19 | GNHOW | Temu | 634418222849576 |
| 20 | GoneBucketing Hat | Temu | 634418220257901 |
| 21 | Good Good lifes | Temu | 634418220225084 |
| 22 | goodshopone | Temu | 634418222024749 |
| 23 | Graphic Grind | Temu | 634418220019353 |
| 24 | GSSDYD | Temu | 634418222529236 |
| 25 | Half past Twelven | Temu | 634418223092984 |
| 26 | HAPPY GO TO YOU | Temu | 634418217066388 |
| 27 | Happy Womens Clothing Shop local | Temu | 634418215695549 |
| 28 | HCYL | Temu | 634418224565513 |
| 29 | HENYIDA AQ | Temu | 634418222141890 |
| 30 | Hermit Theory | Temu | 634418222933755 |
| 31 | HK HK H | Temu | 634418218113915 |
| 32 | HotbloodedTshirt | Temu | 634418223867088 |
| 33 | Hundred Year Old | Temu | 634418223620170 |
| 34 | HUSHANG FASHION | Temu | 634418219415376 |
| 35 | HYXMLYZPP | Temu | 634418223412382 |
| 36 | IBOIBOSHOP | Temu | 634418216017282 |
| 37 | jamerec | Temu | 634418224047485 |

| Doe No. | Seller Alias | Platform | Seller ID |
|---|---|---|---|
| 38 | JAmericanD | Temu | 634418220207901 |
| 39 | Jeeror White | Temu | 634418220183726 |
| 40 | JoyfulTeeShop | Temu | 634418222113238 |
| 41 | KG Fashion | Temu | 634418223060032 |
| 42 | Knot Home | Temu | 634418220183419 |
| 43 | LAI Summer | Temu | 634418223376540 |
| 44 | LAITANG | Temu | 634418220436368 |
| 45 | LATE BLOOMER | Temu | 634418222759693 |
| 46 | LazyGalaxy | Temu | 634418222837033 |
| 47 | lcqgc shop J | Temu | 634418224239979 |
| 48 | LDJXXHH | Temu | 634418222344735 |
| 49 | leiolei | Temu | 634418222887145 |
| 50 | Lemon Bubble | Temu | 634418222624730 |
| 51 | linhuiaa | Temu | 634418221899223 |
| 52 | LINNGLING | Temu | 634418222144015 |
| 53 | LIUZI LIUZI | Temu | 634418223992027 |
| 54 | Lougslin | Temu | 634418223891439 |
| 55 | love LH | Temu | 634418219916803 |
| 56 | LuminaryApparel | Temu | 634418222781489 |
| 57 | Lunoo clothing | Temu | 634418221201307 |
| 58 | Luxury wanderer | Temu | 634418221390496 |
| 59 | LWRLWR | Temu | 634418222954019 |
| 60 | LYS Lnnovation Lab DIY | Temu | 634418220195145 |
| 61 | Mackenzie Yes | Temu | 634418222222115 |
| 62 | Mancao beauty | Temu | 634418222431468 |
| 63 | MASCULIINE | Temu | 634418221485297 |
| 64 | MengUrban Style | Temu | 634418222143145 |
| 65 | Mingxin Essence | Temu | 634418220116351 |
| 66 | Mitte des sommers | Temu | 634418223604784 |
| 67 | Mix Pho J | Temu | 634418219732131 |
| 68 | MNDragon fly | Temu | 634418220705949 |
| 69 | Moonlight Sling Bag Shop | Temu | 634418216381467 |
| 70 | Mrlihualitwo | Temu | 634418220775703 |
| 71 | MrTBoyShow | Temu | 634418219998485 |
| 72 | MTGDXMT | Temu | 634418222013224 |
| 73 | MTH DIY | Temu | 634418214630440 |
| 74 | N Moda Luxe | Temu | 634418219919832 |
| 75 | Nebula Grain | Temu | 634418222157870 |
| 76 | NeoThread | Temu | 634418222633965 |

| Doe No. | Seller Alias | Platform | Seller ID |
|---|---|---|---|
| 77 | New Hutuo | Temu | 634418222741065 |
| 78 | NMSDER | Temu | 634418223024412 |
| 79 | NNorthsong | Temu | 634418219784587 |
| 80 | NorthPulse Market | Temu | 634418223091137 |
| 81 | Nouvea Studio | Temu | 634418223621490 |
| 82 | Nscols | Temu | 634418222570429 |
| 83 | Null Lab A | Temu | 634418224207695 |
| 84 | NVBVAIOA T Shirt | Temu | 634418219905782 |
| 85 | Old Boys Boutique | Temu | 634418217483598 |
| 86 | onbuy | Temu | 634418216553525 |
| 87 | OpalTheory | Temu | 634418223756820 |
| 88 | Ophella | Temu | 634418222560856 |
| 89 | Personalized ThreadworksI | Temu | 634418221654364 |
| 90 | Personalized ThreadworksJ | Temu | 634418221654490 |
| 91 | PICKODTF | Temu | 634418220214215 |
| 92 | Potato cloth | Temu | 634418221200847 |
| 93 | Printed shirts | Temu | 634418224523463 |
| 94 | Product made in cotton T | Temu | 634418225114800 |
| 95 | QBK Eleventh | Temu | 634418223121621 |
| 96 | QBK Fifteenth | Temu | 634418223571304 |
| 97 | QBK Four | Temu | 634418223440660 |
| 98 | QBK Twelfth | Temu | 634418223276231 |
| 99 | Qianduoduo Clothing | Temu | 4150807307150 |
| 100 | QIZGG | Temu | 634418221307591 |
| 101 | Qizoe Fashion | Temu | 634418223902022 |
| 102 | Quality Threads Tshirts | Temu | 634418222012847 |
| 103 | RAINPOP | Temu | 634418219396445 |
| 104 | RiverRider | Temu | 634418220245399 |
| 105 | Roomannticc | Temu | 634418220290511 |
| 106 | RTI Coild | Temu | 634418224329240 |
| 107 | RufanHuang | Temu | 634418223688780 |
| 108 | Rugged Axis | Temu | 634418221866316 |
| 109 | RUTEVOX | Temu | 634418222456097 |
| 110 | ShirtSculpt Studio | Temu | 634418222811597 |
| 111 | Shopping Twentyfive | Temu | 634418222145475 |
| 112 | Shopping twentytwo | Temu | 634418221937311 |
| 113 | Shoppingfortyfour | Temu | 634418222148963 |
| 114 | Sieplei | Temu | 634418224011993 |
| 115 | Skypoew | Temu | 634418220204068 |

| Doe No. | Seller Alias | Platform | Seller ID |
|---|---|---|---|
| 116 | SmallR | Temu | 634418218649293 |
| 117 | SOV QUITR | Temu | 634418222464053 |
| 118 | Sparkyy | Temu | 634418219610717 |
| 119 | SQFFWTY | Temu | 634418224236666 |
| 120 | SSLYE | Temu | 634418219632314 |
| 121 | StreetFusion | Temu | 634418218516204 |
| 122 | Style Blaze three | Temu | 634418223625263 |
| 123 | STYLEHORIZON | Temu | 634418222831011 |
| 124 | Stylish Tee Boutique | Temu | 634418222667106 |
| 125 | SUDOVO | Temu | 634418222166532 |
| 126 | SunnyExports | Temu | 634418220228822 |
| 127 | SwiftCustom | Temu | 634418222090474 |
| 128 | T clothing CB | Temu | 634418221179287 |
| 129 | T HC | Temu | 634418223796418 |
| 130 | TangBYING | Temu | 634418223554952 |
| 131 | taozaishanghang | Temu | 634418224167989 |
| 132 | TB KateraPOD Tees | Temu | 634418223693407 |
| 133 | TB LumeePOD Shop | Temu | 634418223693456 |
| 134 | TC HueanPod Tees | Temu | 634418222534120 |
| 135 | TC JovialJersey | Temu | 634418222534521 |
| 136 | Tee Pack Shop | Temu | 634418218305574 |
| 137 | Teebliss | Temu | 634418223442627 |
| 138 | TeeCanvas Prints S | Temu | 634418223103662 |
| 139 | TeesRealm shop | Temu | 634418221653927 |
| 140 | Teeterrific | Temu | 634418223802581 |
| 141 | The NobleNook | Temu | 634418217323034 |
| 142 | The Printed Story TEE | Temu | 634418222579626 |
| 143 | THINKINGTOGETHER | Temu | 634418222679695 |
| 144 | ThreadMason S | Temu | 634418222544171 |
| 145 | TinVibe | Temu | 634418220183774 |
| 146 | TMSHIRTONE | Temu | 634418222629791 |
| 147 | toagelh | Temu | 634418221626924 |
| 148 | Top Zero | Temu | 634418214231744 |
| 149 | TrendyPlus | Temu | 634418225118125 |
| 150 | TTSHIRTONE | Temu | 634418222624081 |
| 151 | TUTUDUODUO | Temu | 634418221354328 |
| 152 | Unique Print Tee World | Temu | 634418222458209 |
| 153 | UniquePrint | Temu | 634418217476865 |
| 154 | UpperArt | Temu | 634418222204029 |

| Doe No. | Seller Alias | Platform | Seller ID |
|---|---|---|---|
| 155 | UrbanChicCollection | Temu | 634418224053317 |
| 156 | Velumiss | Temu | 634418223197159 |
| 157 | Veritas Alba | Temu | 634418220183115 |
| 158 | Verve Sport | Temu | 634418224650987 |
| 159 | Vestige Atelier | Temu | 634418223391401 |
| 160 | Vilike me Commercial Bank | Temu | 634418224136033 |
| 161 | Vintage Vibe Art | Temu | 634418222844669 |
| 162 | Vklike me commercial bank | Temu | 634418224222220 |
| 163 | VLDAWN | Temu | 634418221595144 |
| 164 | VVFAP | Temu | 634418218020307 |
| 165 | Vynx | Temu | 634418222471249 |
| 166 | WandaZon | Temu | 634418222462750 |
| 167 | Washing Tshirts | Temu | 634418224342527 |
| 168 | WearMyTee | Temu | 634418219487837 |
| 169 | WearYourMood | Temu | 634418217354224 |
| 170 | WellZhuangNeng local | Temu | 634418222654091 |
| 171 | WJHMD | Temu | 634418221452140 |
| 172 | Xiao Ao original | Temu | 634418225067971 |
| 173 | XIAOJUNWEI | Temu | 634418223707400 |
| 174 | XINGMAN | Temu | 634418221394075 |
| 175 | xinyaohuaguangD | Temu | 634418219125784 |
| 176 | Xiubei Rabbit eighteen | Temu | 634418220023810 |
| 177 | xycyzp | Temu | 634418225078040 |
| 178 | Yalide Clothing | Temu | 634418218940048 |
| 179 | yangchunzhiA | Temu | 634418223772861 |
| 180 | YDS Couture | Temu | 634418220665580 |
| 181 | Yellow duck One | Temu | 634418219700998 |
| 182 | Yi TingA | Temu | 634418221981262 |
| 183 | YIMASER | Temu | 634418218508750 |
| 184 | YLL Online | Temu | 634418221688561 |
| 185 | Yoolk CLOTHING | Temu | 634418222828183 |
| 186 | Your Tee Shirts | Temu | 634418219693710 |
| 187 | YouRotating | Temu | 634418215631156 |
| 188 | YOUYOUGOConsume | Temu | 634418221316334 |
| 189 | Yuanwang Global | Temu | 634418223117653 |
| 190 | YuanYuanChen | Temu | 634418220466589 |
| 191 | Yudola Trade | Temu | 634418223374757 |
| 192 | YunTeesCloth | Temu | 634418224130153 |
| 193 | YYshizhu | Temu | 634418222151462 |

| Doe No. | Seller Alias | Platform | Seller ID |
|---|---|---|---|
| 194 | YYTSSS | Temu | 634418222736653 |
| 195 | ZGCKJD | Temu | 634418222071893 |
| 196 | zhanghaochen a | Temu | 634418223821218 |
| 197 | ZS XINTINGZHUO | Temu | 634418220370552 |
| 198 | Zttoy Attire | Temu | 634418226287896 |
| 199 | ZYP Style Statement | Temu | 634418222517280 |
| 200 | ZYXH Trade | Temu | 634418219505519 |